**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
SUSAN G. TAYLOR (SBN 190753)
*staylor@sshhzlaw.com*
SUMMER WRIGHT (SBN 358428)
*swright@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, California 92101
Tel: (619) 400-4990

*Attorneys for Plaintiff Terri Else
and the Proposed Class.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TERRI ELSE, on behalf of herself and all others similarly situated, | **Case No. 8:26-cv-748** |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| ROKU, INC., and TTE TECHNOLOGY, INC., d/b/a TCL NORTH AMERICA, | |
| *Defendants*. | |

CLASS ACTION COMPLAINT

Plaintiff, TERRI ELSE ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class"), brings this class action complaint (the "action") against Defendants ROKU, INC. ("Roku") and TTE TECHNOLOGY, INC. d/b/a TCL NORTH AMERICA ("TCL") (collectively, "Defendants").  Plaintiff alleges the following based upon her personal knowledge and as well as upon investigation of counsel as follows:

## NATURE OF THE CASE

1.     This action arises out of Defendants deceptive and unfair acts and practices in the design, marketing, sale, and ongoing operation of Roku-powered smart televisions ("Roku Products"),[1] including both Roku-branded TV products and licensed partner models such as TCL Roku TVs and other related TV products.

2.     The Roku Products are advertised as consumer-friendly, reliable, and competitively priced within the market for integrated smart televisions. Roku consistently touts its operating system as the *"#1 selling TV operating system"* in the United States, highlighting its functionality, scale, and household penetration as core business strengths.[2]  Roku Products are heavily marketed throughout the United States as "thoughtfully designed Smart TVs" with "vivid picture quality" that will operate for years with minimal issues, seamlessly streaming content and receiving reliable software updates to enhance user experience.[3] There are two means by which Roku users can access Roku's streaming services: either from

---

[1] The Roku Products include Roku Select Series TVs; Roku Plus Series TVs; TCL 3/4/5/6 Series Roku TVs, as well as any and all substantially similar devices which function on the Roku operating system and have had similar issues due to software updates.

[2] *Roku Rings in the New Year with 90 Million Streaming Households*, Roku Newsroom (Jan. 7, 2025), https://newsroom.roku.com/news/2025/01/roku-rings-in-the-new-year-with-90-million-streaming/vqequcxa-1736256134 (last visited Dec. 19, 2025).

[3] Roku, Inc., Form 10-K, at page 1 (SEC filed February 14, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001428439/000142843925000013/roku-20241231.htm#i09cd34beebf4471d9baff8d20668154c_16.

low-cost devices like streaming sticks that integrate into their television or by purchasing Roku's own televisions or devices pre-integrated with Roku's operating system ("Roku OS"). Roku has broadly licensed Roku OS to major television manufacturers such as TCL, RCA, Philips, Hisense, and Walmart's "*Onn*" brand. Roku is now used by 90 million streaming households—almost half of broadband households in the United States.[4] Roku's users streamed 35.8 billion hours in the first quarter of 2025, up 5.1 billion hours from the same period the previous year.[5] In the first quarter of 2025, Roku's net revenue was $1.021 billion.[6]

3.    To ensure that Roku's devices keep working, Roku regularly updates its Roku OS software to provide preventative security reinforcements, enhance user experience, and keep features running.

4.    Software updates are a vital component to Roku's business because digital platforms could not otherwise continue to run without addressing consistent concerns related to security, user experience, and the device's features.  However, Roku's software updates are repetitively defective, materially impairing the functionality of Roku Products, rendering many consumers' televisions either entirely unusable ("bricked"), blacked out, or otherwise substantially degraded in terms of device performance (the "Software Defects").  Software Defects are a result of a platform which cuts corners, failing to ensure that the software updates are actually free of defects both in testing stages and at scale,  failing to adequately invest in software updates which harmonize with the Roku Products, and failing to

---

[4] *Roku Rings in the New Year with 90 Million Streaming Households*, Roku Newsroom (Jan. 7, 2025), https://newsroom.roku.com/news/2025/01/roku-rings-in-the-new-year-with-90-million-streaming/vqequcxa-1736256134 (last visited Dec. 19, 2025).

[5] Kayla Cobb, *Roku Remains 'Confident' It Will Achieve Positive Operating Profit in 2026 Despite Trump Tariffs*, The Wrap (May 1, 2025), *https://www.thewrap.com/roku-earnings-q1-2025* (last visited Dec. 19, 2025).

[6] Matthew Keys, *Roku Earns $1.02 Billion in Revenue During Q1*, TheDesk.net, (May 1, 2025),  *https://thedesk.net/2025/05/roku-q1-2025-earnings-report/ (last visited Dec. 19, 2025).*

take appropriate remediative and corrective action once a defective software update is released (including informing consumers about Software Defects, offering compensation, and releasing new updates which fix (or "patch") Software Defects).

5. Defendants knowingly sold (and continue to sell) tens of thousands of Products that have Software Defects which corrupt user experience to the point of inoperability, including screen black outs, loss of video, the screen flashing on and off, or otherwise malfunctioning. Despite consumers' persistent complaints of repeated system failures, often leaving their TVs completely inoperable, Defendants offer no recourse. This is inconsistent with representations made in express warranties which promise to repair, correct, or otherwise remediate the Software Defect.

6. As such, Plaintiff Else, on behalf of herself and the proposed classes of consumers who purchased the Roku Products with the same or substantially similar defect in materials and workmanship, seek recovery for damages suffered as a result of Roku's Products during the statutory period.

## JURISDICTION AND VENUE

7. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2), the Class Action Fairness Act of 2005 because the aggregated claims of Class members exceed $5 million exclusive of costs and interest, members of the nationwide putative Class and Defendants are residents of different states and are at least one hundred members of the proposed Class.

8. *Personal Jurisdiction.* This Court has personal jurisdiction over Defendants because Roku Inc., and TCL, have regular and systematic contacts in the state of California, in which they do business and placed Roku Products including the Roku OS into the stream of commerce. Additionally, both Plaintiff and Defendant TCL are located in this District.

///

///

CLASS ACTION COMPLAINT

3

9.    *Venue.*  Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Roku Inc. and TCL are subject to personal jurisdiction, and a substantial portion of the conduct described in this Complaint was carried out in this District.

## PARTIES

10.    Plaintiff Terri Else is domiciled in Los Angeles, California located in Los Angeles County.

11.    Defendant Roku, Inc. is a California corporation, with its principal place of business located in San Jose, California at 1173 Coleman Avenue San Jose, California 95110.

12.    Defendant TTE Technology, Inc., d/b/a TCL North America is a Delaware corporation, with its principal place of business located in Irvine, California at 189 Technology Drive, Irvine, California. TCL manufactures, markets, and sells televisions in the United States, including those branded as "TCL Roku TVs."

## FACTUAL BACKGROUND

### A.    Roku TVs and the Roku TV Operating System

13.    Roku, founded in 2002, is a leading TV streaming platform in the United States. Roku's mission is to "connect and benefit the global TV ecosystem" by "enabling users to access streaming content," providing tools for content publishers to build and monetize audiences and offering advertisers sophisticated tools to engage consumers.[7]

14.    Roku has developed and deployed a suite of streaming devices and smart televisions powered by its proprietary operating system, Roku OS, which is specifically designed for streaming content. Roku OS serves as the foundation of the Roku platform, connecting viewers to streaming services via broadband

---

[7] About Roku, https://www.roku.com/about/company?srsltid=AfmBOooxBOZO00O1f0cEkSzfDeHabFCDA9igluRQlKj-OjsDRayfvE7B, (last visited Dec. 19, 2025).

networks and offering access to a wide selection of content.[8] Roku has represented that its operating system provides "customers access to content they want at prices they can afford."[9]

15.    The smart television industry is a multi-billion-dollar segment of consumer electronics. In the United States, smart TVs with integrated operating systems dominate the market, with Roku's platform being one of the most widely adopted.[10] Roku TV, powered by Roku OS, has been recognized as the leading smart TV operating system in the United States, used by millions of households and licensed to major TV manufacturers, including TCL.[11]

16.    Roku markets televisions and streaming devices such as Roku's Streaming Sticks that run the Roku OS (collectively, "Roku Products"). These include both TV products sold under the Roku brand and TVs manufactured and sold by licensed third-party brands, such as TCL, that integrate the Roku OS.[12]

17.    Roku has positioned the Roku TV platform as an integrated, user-friendly, and reliable smart television experience. It promotes ease of use, broad content access, and an interface designed to work seamlessly over time through

---

[8] Roku, Inc., Form 10-K, at page 1 (SEC filed February 14, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001428439/000142843925000013/roku-20241231.htm#i09cd34beebf4471d9baff8d20668154c_16.

[9] *Our Story,* Roku, https://www.roku.com/about/history-of-roku (last visited Dec. 19, 2025).

[10] *Company*, Roku, https://www.roku.com/about/company (last visited Dec. 19, 2025).

[11] *Roku, the #1 Selling TV Operating System in the U.S. and Mexico, Celebrates 10 Years of Roku TV*, Roku (Blog) (June 3, 2024), https://newsroom.roku.com/news/2024/01/roku-the-1-selling-tv-operating-system-in/auojhl-5-1704293241 (last visited Dec. 19, 2025); TCL Partnerships, https://www.tcl.com/us/en/partnerships/roku (last visited Dec. 19, 2025).

[12] *Roku Streaming Players*, Roku, https://www.roku.com/products/players; *Smart TVs made by Roku*, https://www.roku.com/products/roku-tv/roku-made-tvs.; Roku, *What is Roku?*, https://www.roku.com/what-is-roku (last visited Dec. 19, 2025).

ongoing software updates.[13] Roku markets its operating system and software updates as enhancing the user experience and enabling functionality across a wide range of applications and content discovery features.[14]

18.    Roku has publicly represented that the Roku OS is the "#1 selling TV OS" in the United States and has emphasized the scale of its TV OS footprint as a key business attribute.[15]

## Finally, a smart TV that doesn't try to outsmart you

A Roku TV loaded with features you'd expect, like stunning picture and seamless streaming, and ones you might not, like Roku Smart Picture and a no-nonsense voice remote. A smart TV that makes sense.



**Made by Roku**

From the brand you trust to make streaming easier comes a thoughtfully designed smart TV powered by the delightfully simple Roku experience.



**Brilliant 4K picture**

Stunningly sharp 4K resolution brings out the rich detail in your entertainment. Incredible HDR color, contrast, and brightness brings your favorite entertainment to life.

**Always easy on the eyes**

Roku Smart Picture cleans up incoming TV signals, optimizes them for your TV, and automatically chooses the right picture mode for whatever you're watching.



**Seamless streaming**

With features like fast Wi-Fi® and channels that launch in a snap, Roku Select Series TVs get you your entertainment quick and easy.



**Quick and easy setup**

Just power up your device, connect to the internet, and dive into a world of streaming.



**End lag in a hurry**

Keep your gameplay smooth with a variable refresh rate that reduces lag and screen tearing.

**How sound should sound**

Designed with Dolby Audio® technology for clear speech and louder sound.



**Home theater ready**

Easily upgrade to premium 2.1 sound with Roku wireless audio.

---

[13] *Id.*

[14] *Id.*

[15] *Roku, the #1 Selling TV Operating System in the U.S. and Mexico, Celebrates 10 Years of Roku TV*, Roku (Blog), June 3, 2024, https://newsroom.roku.com/news/2024/01/roku-the-1-selling-tv-operating-system-in/auojhl-5-1704293241 (last accessed Dec. 19, 2025).; Roku, Inc., Form 10-K, at page 1 (SEC filed February 14, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001428439/000142843925000013/roku-20241231.htm#i09cd34beebf4471d9baff8d20668154c_16.



*Based on hours streamed (Hypothesis Group)

**B.      TCL Roku TVs and the Roku-TCL Partnership**

19.      TCL manufactures, markets, and distributes TVs in the United States including smart TVs that incorporate Roku's TV operating system under the "TCL Roku TV" tradename and related branding.[16]

20.      TCL sells televisions nationwide through numerous retailers such as Amazon, Best Buy, Target, and Walmart.

21.      TCL is one of the leading sellers of televisions in the United States, maintaining a top-two retail market share of TV shipments in the U.S. in recent years and becoming a major competitor to longstanding brands in North America.[17]

22.      Roku and TCL have publicly described a commercial partnership under which TCL integrates Roku's TV platform into TCL-branded TVs sold to consumers nationwide.[18]

---

[16] Press Release, *TCL & Roku Enter a Partnership to Create A New Generation of Smart TVs*, (Feb. 03, 2014), https://www.tcl.com/us/en/press-releases/tcl-roku-partnership (last visited Dec. 19, 2025); TCL 4 Series Product Page, https://www.tcl.com/us/en/products/home-theater/4-series/55-class-4-series-4k-uhd-led-smart-roku-tv-55s455 (last visited Dec. 18, 2025).

[17] Zachary Comeau, *Samsung, TCL, LG and Hisense Jockey for the Premium TV Market*, CEPro, (Mar. 05, 2025), https://www.cepro.com/news/samsung-tcl-lg-and-hisense-jockey-for-the-premium-tv-market/147283 (last visited Dec. 18, 2025).

[18] Press Release, *TCL & Roku Enter a Partnership to Create A New Generation of Smart TVs*, (Feb. 03, 2014), https://www.tcl.com/us/en/press-releases/tcl-roku-partnership (last visited Dec. 19, 2025).

23.     In partnership with Roku, TCL has marketed TCL Roku TVs as affordable smart televisions that combine modern display technology with Roku's software platform to deliver value and dependable smart TV performance at competitive price points.[19]

**C.      The Roku Software Defects**

24.     Roku controls the Roku OS and deploys its operating system and automatic application-level software updates to Roku Products, including TCL Roku TVs.[20]

25.     Roku OS software updates are automatically delivered over the air and control core television functionality, including boot processes, system stability, and video display output.[21]

26.     Roku TVs suffer from a latent defect whereby official software updates—such as Roku OS 11.x and Roku OS 14—can render televisions inoperable or substantially degrade their functionality, including loss of picture display, black or blank screens, and persistent boot issues like infinite boot loops, freezing on the logo screen, or failing to turn on entirely.[22]

27.     These updates are marketed as seamless improvements to the platform, delivered automatically to consumers' televisions, and are controlled exclusively by Roku.[23]

---

[19] *TCL Partnerships*, https://www.tcl.com/us/en/partnerships/roku (last visited Dec. 19, 2025).

[20] *Id*.

[21]Roku Website, *What is Roku?*, https://www.roku.com/what-is-roku (last visited Dec. 19, 2025).

[22] Roku Community Page, Consumer Complaint, https://community.roku.com/discussions/tv-and-players/os-11-5-roku-tv-tcl-black-screen-on-display/830524#M29292 (last visited Dec. 18, 2025).

[23] Ilya Asnis, *Roku OS 11 enhances user personalization with Photo Streams, expanded content discovery, and new sound modes*, Roku Blog, (Mar. 22, 2022) https://www.roku.com/blog/roku-os-11?srsltid=AfmBOopUxTe47GkeszofsRmku6inxivdCwWB-SLX2Hph117fJ-ayFaMQ (last visited Dec. 18, 2025).

CLASS ACTION COMPLAINT

28.     Roku's update practices have resulted in recurring, material failures that impair Roku TV's core functionality, including: black or blank screens, an inability to load or display video, flashing screens, and repeated restart, boot-loop, or recovery-mode behavior following official Roku updates (the "Defect").[24] When this Defect manifests, Roku TVs lose the ability to perform the core function consumers expect: streaming and displaying audio and video content reliably. Consumers report that defective Roku TVs might power on but show no picture, repeatedly restart, or become stuck on a boot loop cycle, leaving consumers without a functional television.

29.     For example, Roku's official community forums include consumer reports describing TCL Roku TV models experiencing "black screen" behavior immediately following Roku OS updates. These reports include televisions power on but fail to display any picture,[25] becoming stuck on the Roku logo screen, entering repeated boot loop cycles, or otherwise failing to load properly after software updates, requiring extensive and often unsuccessful troubleshooting attempts by consumers.[26] Several users describe their frustrating experience on the Roku Community page:

> Ever since the [Roku] 14.5.4 5944 update was auto installed my streaming stick no longer works. I have done all the troubleshooting (power cycles, diff HDMI port, etc.) except a factory reset which I would like to avoid.  … the image on the TV is now filled with distortion lines and static and playing anything is accompanied by a loud "cracking

[24] Roku Support Community Page, Customer Complaint, https://community.roku.com/discussions/Known-issues/solved-blank-roku-tv-home-screen/977505 (last visited Dec. 19, 2025).

[25] Roku Support Community Page, Customer Complaint, https://community.roku.com/discussions/tv-and-players/os-11-5-roku-tv-tcl-black-screen-on-display/830524#M29292 (last visited Dec. 19, 2025).

[26] Roku Support Community Page, Customer Complaint, https://community.roku.com/discussions/tv-and-players/stuck-on-initial-software-update/962364 (last visited Dec. 19, 2025).

sound and unwatchable. This is for every channel we have loaded and [on] the home screen. Please help!

\*\*\*

This just happened with another [Roku]. That's 4 [TVs] that are now down. I tested with [the] new version 14.6.4 build 9914, [and had] the same result. If there is no fix could you at least stop force updating until this is resolved?

\*\*\*

Screen went black death for a SECOND TIME today in under 2 yrs!! It was a few days away from being out of warranty the first time, so it was barely 11 months the first time the screen went out…They fixed it because it was still under warranty. That was September of last year. Here it is just a few months later, not even a full year, and the same thing has happened again. Black screen. [I have] [t]ried all of the normal options to fix it, [I] finally factory reset it, power off, power on, nothing! Sounds works. Barely…They won't repair/replace or fix it, even though I offered to pay them![27]

\*\*\*

Over the weekend, one of my two TCL Roku TVs went black.  It flickers for a moment when I turn it on, then black.  It still has audio.  This happened once before on the same tv, but after about three days it started working again.  I have tried all the tricks multiple times, but nothing has worked.  I suspect last time this happened it was an issue with a software update due to some other posts on here.  So, I am wondering if anyone else is having this problem?  I checked for updates on my other tv, and it says it is up to date.  Thanks in advance. #tcl #blackscreen

\*\*\*

30.    These failures deprive the consumer of the fundamental purpose for which the televisions were marketed and purchased.

/ / /

/ / /

/ / /

---

[27] Roku Support Community Page,  https://community.roku.com/discussions/tv-and-players/do-you-have-a-tcl-tv-that-no-longer-works/661338#M16713 (last visited Dec. 19, 2025).

31. Further, Defendants claim to provide Roku Products that are "user friendly," with "stunning visuals and seamless streaming" providing "an unbelievably simple experience".[28]

32. However, consumers with defective Roku TVs consistently report that their complaints to Roku and TCL are met with instructions to engage in often unsuccessful, self-guided troubleshooting instructions.[29]

33. Roku's online Community Forum Support website lists scenarios in which Roku TVs repeatedly restart or become stuck on the logo screen, including instructions to attempt restarts, factory resets, and recovery-mode procedures.[30]

34. TCL Roku TV's online Support Page likewise lists problems such as "boot loop," the TV "freezes or is unresponsive" and "Roku logo screen" as issues on TCL Roku TVs and instructs consumers to attempt recovery-mode and restoration procedures.[31]

35. Defendants shift the burden to the consumer to troubleshoot known malfunctions of their defective products.

---

[28] Walmart TCL Roku TV Ad, https://www.walmart.com/ip/50-Roku-Select-Series-4K/15947423237?classType=REGULAR (last visited Dec. 19, 2025); Roku Select Series TVs, https://www.roku.com/products/roku-tv/roku-made-tvs/select-series-4k (last visited Dec. 18, 2025); TCL Press Release, https://www.tcl.com/us/en/press-releases/tcl-roku-partnership.
[29] Roku Community Search Page, https://community.roku.com/search?q=software+update+and+screen+went+black (last visited Dec. 19, 2025).  Roku Community Search Page, https://community.roku.com/search?q=software+update+and+screen+went+black (last visited Dec. 19, 2025).
[30] Roku Community Support Page, Consumer Complaints, https://community.roku.com/discussions/apps-and-viewing/blank-screen-on-roku-after-an-update/1068938; https://support.roku.com/article/360044050174 (last visited Dec. 19, 2019).
[31] Roku Support Page, Troubleshooting Instructions, https://support.tcl.com/rokutv-troubleshooting/how-can-i-restore-a-tcl-roku-tv-in-recovery-mode (last visited Dec. 19, 2025).

36. Plaintiff alleges that, notwithstanding these troubleshooting instructions, many affected consumers are unable to restore full functionality to their TVs, and when they do, it is not without the expenditure of significant time, repeated resets, and in some cases expenses for repair or replacement.

37. Plaintiff alleges that these issues, whether resulting in complete loss of picture or substantial degradation in display output, undermine the reliability and longevity consumers reasonably expect from a smart TV marketed as receiving dependable software updates designed to enhance the consumer's experience.

38. The models at issue here are the Roku Select Series; the Roku Plus Series; TCL 3/4/5/6 Series Roku TVs and any and all substantially similar devices which function on the Roku OS and have had similar issues due to software updates (the "Roku Products"). Plaintiff reserves the right to amend the Products definition upon Defendants identifying in discovery all of its TVs manufactured and sold with the relevant defect.

39. The defective Products are all powered by the Roku OS and are substantially similar in design, manufacture, and operation.

40. Upon information and belief, Defendants are aware of multiple, long-standing Roku TV Product production errors, as described herein.

41. Due to the defective nature of the Defendants' Products, purchasers are damaged.

**D.    Defendants' Knowledge and Concealment of the Defects**

42. At all relevant times, Defendants had actual and constructive knowledge that the Roku Products suffer from the Software Defects, particularly following Roku OS software updates.

43. Defendants' knowledge is evidenced by widespread and consistent consumer complaints, over several years, reported through Roku's official community forums and other publicly accessible platforms describing identical black-screen failures occurring immediately after Roku OS updates.

44.     These reports describe TVs that power on but fail to load properly, become trapped on the Roku logo screen, or repeatedly restart, rendering the TVs unusable, despite extensive attempts to restore or reset.



45.     Defendants' own troubleshooting support pages on their websites indicates they have knowledge of the Software Defects. Particularly, that Roku TVs repeatedly exhibit the defective behavior described above. A steady stream of consumer complaints, warranty claims, and support inquiries, have been submitted internally and on external websites, like the Better Business Bureau, throughout the class period.[32]

46.     Further, the existence of TCL and Roku support pages specifically addressing customers' concerns regarding their Roku TVs boot-loop cycle, freezing, and black-screen behavior, is evidence that Defendants' have known or should have known of the Defect.[33]

---

[32] Roku TV Complaints, Better Business Bureau, https://www.bbb.org/us/ca/san-jose/profile/wholesale-electronic-supplies/roku-inc-1216-223541/complaints (last visited Dec. 18, 2025).

[33] TCL Customer Support Page, https://support.tcl.com/rokutv-troubleshooting/01-my-tv-turns-on-but-there-is-no-video (last visited Dec. 19, 2025).

Despite this knowledge, Defendants failed to disclose the Software Defects to consumers prior to purchase and continued to market Roku televisions as reliable smart TVs designed to "keep getting better over time…thanks to [ongoing] automatic software updates."[34]

### E.    TCL & Roku's Deceptive Advertising Practices

47.    In addition to TCL and Roku's failure to disclose the Defect, failure to warn of the Defect, omissions as to the Defect, and deceptive warranty statements, TCL and Roku also engaged in a deceptive advertising campaign.

48.    For example, Defendants market Roku TVs as simple, reliable, and consumer friendly smart televisions powered by the Roku OS, providing stunning visuals and seamless streaming.[35] Roku consistently promotes its OS as providing "All of TV in one place," emphasizing ease of navigation and seamless access to streaming services.[36] Roku's advertisements stress that its OS is specifically designed to make TVs easier to use and improve over time through ongoing software updates.

/ / /

/ / /

/ / /

/ / /

---

[34] Roku Website, Products, https://www.roku.com/products/roku-tv/features?srsltid=AfmBOoqjJ3BEVRKxuJ5PxTXjZ1syIH2wdJL-VY6A8ynhW6fgv4S_2vFu (last visited Feb. 5, 2026).
[35] Roku Website, Smart TVs Made by Roku, https://www.roku.com/products/roku-tv/roku-made-tvs?srsltid=AfmBOoq3cNCvlCU9lGqx0VxknWUJeKND_6BCZ6A-zhaDeMOPgXQP3sV_(last visited Feb. 5, 2026); Roku Website, Roku TVs, https://www.roku.com/products/roku-tv  (last visited Feb. 05, 2026).
[36] Roku Home Page, https://advertising.roku.com/ (last visited Dec. 18, 2025).

49.     Roku further promotes the scale, maturity, and widespread adoption of its platform as markers of reliability. These representations reinforce consumer expectations that Roku TVs are stable, well-supported products designed for long-term everyday use, not fragile devices that will stop functioning within a year or two.



50.     Defendants repeatedly emphasize that Roku OS updates enhance content discovery, personalization, and platform features, and that such updates roll out broadly to supported devices, including Roku TVs sold to consumers.[37]

/ / /

/ / /

---

[37] Roku Product Page, https://www.roku.com/products/roku-tv/roku-made-tvs/select-series-4k (last visited Dec. 19, 2025); Roku Support Community Page, https://community.roku.com/discussions/tv-and-players/os-11-5-roku-tv-tcl-black-screen-on-display/830524#M29292 (last visited Dec. 18, 2025).

51.    TCL's advertising similarly highlights that its televisions are "powered by Roku," presenting Roku OS as a core selling feature and claiming that TCL Roku TVs offer an "unbelievably simple," "user-friendly," and dependable smart TV experience at an affordable price. TCL markets its TVs as removing traditional barriers to entry while still offering quality, reliability, and ongoing software support.[38]

---

[38] TCL Partnership Announcement, https://www.tcl.com/us/en/partnerships/roku (last visited Dec. 19, 2025).





52.     These uniform representations conveyed to reasonable consumers that Roku Products are stable, well-supported products for long-term ownership and routine household use, and further that software updates would only enhance, not impair, the functionality of their TVs.

53.     In reality, Roku OS updates frequently trigger the Defect, causing TVs to lose core, basic functionality, including the ability to display any picture, thereby contravening the fundamental purpose for which the TVs were marketed and purchased.

54.     Long-term functionality and reliable software support are not only material—they are central to the purchase decision. Buyers expect their devices to remain functional and optimized through the life cycle of the automatic updates, pushed to their TVs.

/ / /

55.    Defendants' marketing representations about the Roku Products' longevity, software support, and update reliability were materially misleading. While claiming to deliver sustained TV streaming optimization, Roku failed to adequately test its own updates to ensure compatibility and stability with the hardware it sold.

56.    TCL and Roku also omitted any warning that its TVs were susceptible to defects upon update, despite having rolled out previous updates and seeing the consumer complaints, not just in third party chat rooms, but on their own Community Support group forums.[39] Defendants' continued promotion of the Roku Products as reliable, future-proof, and intelligent, particularly after widespread complaints emerged, was deceptive and unfair under California law.

## **PLAINTIFF'S EXPERIENCE**

57.    On or about September 2018, Plaintiff Else purchased a TCL Roku TV from Best Buy. Defendants manufacture, market, advertise, and sell TCL Roku TVs as reliable, high-quality televisions designed for long-term consumer use. At the time of sale, Defendants failed to disclose that TCL Roku TVs suffer from a defect that causes the screen to suddenly go black, white, flash, or otherwise fail while audio continues to function. Plaintiff used the TCL Roku TV solely for its intended and ordinary household purposes.

58.    In or around 2020, Plaintiff's TCL Roku TV suddenly malfunctioned when the screen began flashing a white light and then went completely black and it would not display an image. At that time, Plaintiff was able to temporarily restore the picture by following troubleshooting instructions published on Roku's online community support page.

/ / /

---

[39] Roku Community Support Page, Consumer Complaints, https://community.roku.com/discussions/apps-and-viewing/blank-screen-on-roku-after-an-update/1068938; https://support.roku.com/article/360044050174 (last visited Dec. 19, 2019).

59. In or around January 2022, Plaintiff's TCL Roku TV malfunctioned again, with the screen flashing a white light and then going completely black, with no audio or video image displayed. Ms. Else contacted TCL customer support and spoke with a representative who walked her through a few troubleshooting steps, but this did not remedy the issue. Ms. Else was left with a TV that would not function and with no remedy.

60. In or around January 2023, Plaintiff experienced the same Screen Defect again when the TCL Roku TV screen suddenly went black while audio remained operative. Plaintiff attempted to resolve the issue using the same troubleshooting steps that had previously worked, but those efforts were unsuccessful, and the television remained defective.

61. Thereafter, Plaintiff's boyfriend contacted TCL's customer service on Plaintiff's behalf to report the malfunction. TCL informed Plaintiff that the Software Defects were not covered by the television's warranty and that Plaintiff's only options were to attempt further troubleshooting or purchase a new television.

62. Deprived of any meaningful remedy and relying on Defendants' representations regarding the quality and durability of TCL Roku TVs, Plaintiff was forced to purchase a replacement TCL Roku TV.

63. Just over one year later, on or around September 10, 2024, Plaintiff experienced the same Defect with her replacement TCL Roku TV when the screen suddenly went black while audio continued to function. Plaintiff and her boyfriend once again consulted Roku's online community support page and discovered numerous complaints from other consumers reporting identical screen failures with TCL Roku TVs.

64. Plaintiff's TCL Roku TV remains nonfunctional to this day. As a result of the Defect, Plaintiff has lost the use and benefit of her television and suffered ascertainable economic losses.

/ / /

65.     Plaintiff subsequently learned that Defendants were aware of widespread and recurring screen failures affecting TCL Roku TVs but failed to disclose the Software Defects at the point of sale or provide repairs, replacements, or refunds to Plaintiff and similarly situated consumers.

## CLASS ACTION ALLEGATIONS

66.     Pursuant to Federal Rule of Civil Procedure 23, this action is brought individually by Plaintiff and on behalf of the following proposed Nationwide Class and State Subclasses of similarly situated individuals:

**Nationwide Class**: All consumers residing in the United States who purchased Roku TV products manufactured by Roku, Inc. or TCL including but not limited to the following models: Roku Select Series; Roku Plus Series; TCL 3/4/5/6 Series Roku TVs, from the period of December 16, 2024 to the present (the "Nationwide Class Period").

**California Class**: All consumers residing in the state of California who purchased Roku TV products manufactured by Roku, Inc. or TCL including but not limited to the following models: Roku Select Series; Roku Plus Series; TCL 3/4/5/6 Series Roku TVs, from the period of December 16, 2024 to the present (the "California Class Period").

67.     Plaintiff reserves the right to amend the class definitions based on discovery.

68.     Excluded from the Proposed Classes are TCL/Roku; any affiliate, parents, or subsidiary of TCL/Roku; any entity in which TCL/Roku has a controlling interest; any officer, director, or employee of TCL/Roku; any successor or assign of TCL/Roku; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased the Products solely for the purpose of resale.

/ / /

69.     Members of the proposed Classes are readily ascertainable because the Class definitions are based upon objective criteria.

70.     **Numerosity**. This action is brought by Plaintiff on behalf of all other persons similarly situated whose joinder in this action is impracticable because the Classes are so numerous. Defendants sold thousands of Roku Products to people across the nation, including in California. Defendants continue to sell defective Roku Products. Thus, there are too many members to practically join in a single action.

71.     **Commonality and Predominance**. Common questions of law and fact exist as to all proposed members of the Classes and predominate over questions that might affect only individual Class Members. These common questions include but are not limited to:

a.      Whether the Defendants' Roku Products were defective, including whether they were defectively designed, manufactured, or unfit for their intended use;

b.      Whether Defendants' representations about the long-term reliability, software update support, and functionality of the Roku Products were false, misleading, or deceptive;

c.      Whether Defendants intentionally or negligently misrepresented or omitted material facts regarding the reliability and functionality of Roku Products to induce purchases;

d.      Whether Defendants knew or should have known that the Roku Products were defective, and, if so, when this Defect was discovered by Defendants;

e.      Whether Plaintiff and Class Members reasonably relied on Defendants' representations or omissions in deciding to purchase the devices;

f.      Whether Defendants breached any express or implied warranties, including the implied warranty of merchantability;

g.  Whether TCL's and/or Roku's conduct constituted false advertising, unfair competition, or violated the California Consumers Legal Remedies Act;

h.  Whether Defendants unjustly retained revenues from the sale of defective Roku Products and should be ordered to disgorge those profits;

i.  Whether Plaintiff and Class Members suffered economic harm, and the appropriate measure of damages, restitution, or other monetary relief;

j.  Whether injunctive or equitable relief is warranted to prevent future harm, and the scope of such relief;

k.  Whether Plaintiff and Class Members are entitled to attorneys' fees, expert costs, and litigation expenses.

72.  **Typicality**. Plaintiff's claims are typical of the claims of the proposed Classes. Plaintiff and Class Members all purchased Roku TV Products that have a propensity to 'black out' or lose functionality due to a defect in manufacturing, and/or workmanship.

73.  **Adequacy**. Plaintiff is an adequate representative of the proposed Classes because her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation and will prosecute vigorously on behalf of the proposed Classes.

74.  **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of the individual actions against Defendants economically feasible. Even if Class Members themselves could afford individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective Roku Products individualized litigation increases delay and expense to all parties and the court system presented by the legal and

factual issues of the case. By contrast, a class action presents fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Further, prosecution of separate actions would create a substantial risk of inconsistent and varying adjudications.

75. In the alternative, the proposed Classes may be certified because:

a. The prosecution of separate actions by the individual members of the proposed Classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b. The prosecution of individual actions could result in adjudications that as a practical matter would be dispositive of the interests of non-party Class Members, or which would substantially impair their ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to members of the proposed Classes as a whole.

**STATUTES OF LIMITATION DO NOT BAR PLAINTIFF'S CLAIMS**

76. Defendants' wrongful conduct constitutes a continuing violation. Defendants repeatedly engaged in wrongful acts by designing, marketing, selling, and continuing to support Roku-powered smart televisions that suffer from a latent defect, including by repeatedly deploying official Roku operating system software updates that impaired or disabled core television functionality.

77. Each time Defendants marketed Roku Products as reliable, durable, and compatible with software updates, failed to disclose the Defect, or pushed software updates that caused black screens, loss of video output, boot loops, or system failure, Defendants invaded the interests of Plaintiff and Class Members and caused new and independent injuries.

78.    Plaintiff and Class Members were repeatedly injured each time they purchased Roku Products at inflated prices, relied on Defendants' ongoing representations regarding reliability and update support, or experienced loss of functionality following official software updates during the televisions' useful lives.

79.    The applicable statutes of limitation are tolled under the doctrine of fraudulent concealment. Defendants knowingly concealed and failed to disclose the existence of the Software Defects and the risks associated with official software updates, despite possessing superior and exclusive knowledge of those facts.

80.    Plaintiff and Class Members did not have actual or constructive knowledge of the facts giving rise to their claims and could not have discovered the Software Defects through the exercise of reasonable diligence. The Software Defects were latent, manifested after purchase, and were actively concealed by Defendants through misleading marketing, partial disclosures, and the absence of corrective warnings or disclosures.

81.    Accordingly, Defendants are equitably estopped from asserting statutes of limitation as a defense, and Plaintiff's and Class Members' claims are timely.

## INADEQUATE REMEDY AT LAW

82.    Legal remedies available to Plaintiff are inadequate because they are not equally prompt, certain and efficient as equitable relief. Restitution under the UCL can be awarded in situations where the entitlement to damages is not available. Additionally, damages and restitution are not necessarily the same amount, as restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest, but rather entitles the Plaintiff to recover all profits from Defendant's wrongdoing. Legal remedies are also inadequate to prevent future harm. Absent injunctive relief, Plaintiff will be unable to rely on the Defendant's advertising or labeling in the future that claims to provide a product that remains fully operational through software updates intended to improve and enhance the

customer experience, but which in reality render the Roku TV core functions inoperable. As such, Plaintiff will not purchase the products although she would like to if Defendant were to provide a product that was fully operational through seamless software updates consistent with its advertising.

## CAUSES OF ACTION

## COUNT I – BREACH OF EXPRESS WARRANTIES

82. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

83. Plaintiff and the Class purchased their Roku Products, including Roku-branded televisions sold by Defendant Roku and TCL Roku TVs manufactured and sold by Defendant TCL, with the reasonable expectation that the televisions would function properly throughout the usable life of the product.

84. Defendants made statements of fact and promises that Roku Products were of merchantable quality and fit for their ordinary use as smart televisions.

85. Defendant Roku expressly warranted, through written affirmations of fact and promises, that the Roku-branded televisions sold in the United States, will be free from defects in materials and workmanship for a period of one year under normal use. Roku also controls the Roku TV operating system and the software updates that are pushed to Roku-branded televisions and markets those updates as maintaining or improving performance and reliability.

86. Defendant TCL separately expressly warranted that TCL Roku Products sold in the United States, likewise, will be free from defects in materials and workmanship for a period of one year under normal use. Although TCL manufactures and sells the hardware, TCL Roku TVs operate using Roku's operating system and receive Roku-controlled software updates.

87. Specifically, Defendants marketed Roku TVs as reliable smart televisions designed to deliver consistent picture quality, dependable operation, and continued functionality through official Roku operating system software updates.

88. These affirmations constituted express warranties within the meaning of California Commercial Code § 2313(1), which provides that:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; and

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

89. Defendants breached their express warranties by releasing automatic software updates to the Roku Products which caused widespread and severe malfunctions, including but not limited to the Defect, as described herein.

90. As a result, the Roku Products failed to perform as represented and became unfit for their ordinary use, including the basic function of displaying video.

91. Despite receiving notice of the Software Defects through widespread consumer complaints, warranty claims, and support inquiries, Defendants failed to adequately repair, replace, or otherwise cure the defective condition, and continue to market Roku Products as reliable smart televisions. Defendants have not issued a recall, extended warranty coverage, or offered refunds and continue to promote the Roku products as reliable and future-ready despite knowledge of the defect.

92. The Roku Products failed to perform as Defendants promised. The Products were not of the same quality as those generally acceptable in the trade, nor were they fit for the ordinary purposes for which such goods are used. In breach of Defendants' express warranties, the televisions were rendered partially or completely inoperable by the Defect.

93. Plaintiff took reasonable steps to immediately notify TCL of the damage the Software Defects were causing to her TVs. The Roku Products were not as represented, were not of merchantable quality, nor fit for their particular purpose.

94. Defendants were further put on notice by the numerous complaints concerning the Software Defects, by Plaintiff's pre-litigation demand letter. When Defendants placed the Roku Products into the stream of commerce, it reasonably should have known of the Defect.

95. The Software Defects were not open or obvious to consumers at the time of purchase.

96. Any purported limitation of the duration and scope of the express warranties given by Defendants is unreasonable, unconscionable, and void, because Defendants know or recklessly disregarded that the Software Defects in the Roku Products existed and might not be discovered, if at all, until the defective Products had been used for a period of time longer than the period of any warranty, and Defendants willfully withheld information about the Software Defects from purchasers of Roku Products.

97. As a direct and proximate result of Defendants' representations and conduct, Plaintiff and the Class have suffered injury and damages, in an amount to be determined at trial.

98. Plaintiff and Class Members were injured as a result of Defendant's breach. Had Plaintiff and Class members known that the Software Defects would render their devices non-functional, they would not have purchased Roku Products, or would have paid substantially less for them.

99. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class have suffered damages, including, but not limited to, overpayment, loss of use, diminished value, and costs of repair or replacement.

100. The time limits and other terms contained in Defendants' warranties are unconscionable and inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants. A gross disparity in bargaining power exists between Defendants and Class Members, and

Defendants knew or should have known that the Roku Products were defective at the time of sale.

101. Plaintiff and Class Members have complied with all obligations under the warranties, or otherwise have been excused from performance of those obligations as a result of Defendants' conduct described herein.

102. Plaintiff and Class Members are entitled to recover all legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem just or proper.

## COUNT II – BREACH OF IMPLIED WARRANTIES

103. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

104. Defendants warranted that its Roku Products were of merchantable quality and fit for their ordinary purpose.

105. Defendants warranted that its Roku Products had been properly made and the TVs would not malfunction, lose video function and/or become inoperable.

106. Defendants breached these implied warranties:

    a.    The Roku Products were not merchantable because the Software Defects caused loss of functionality;

    b.    The Roku Products were not properly designed, not properly manufactured, and/or suffered from poor workmanship because the screens suddenly went black, lost video function, or otherwise malfunctioned;

    c.    The Roku Products were not fit for their ordinary purpose, including viewing any content on any of the many Applications available on the Roku OS.

107. Plaintiff and each member of the Class have had sufficient direct dealings with Defendants to establish privity of contract with Defendants.

108.   Privity is not required here because Plaintiff and each member of the Class are intended third-party beneficiaries of contracts between TCL and Roku including, of Defendants' implied warranties.

109.   The warranties were designed to benefit consumers only.

110.   As a direct and proximate cause of Defendants' breaches, Plaintiff and Class Members bought Roku Products they otherwise would not have purchased, did not receive the benefit of their bargain, and their Roku Products suffered diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for repair and replacement of defective TVs.

111.   Plaintiff and Class Members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorney fees, costs of suit, and such further relief as the Court may deem just or proper.

## COUNT III – BREACH OF EXPRESS WARRANTIES UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT

*(By Plaintiff, Individually and on behalf of the California Class)*

112.   Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

113.   Roku Products are "consumer goods" within the meaning in Cal. Civ. Code § 1791(a). Plaintiff and Class Members are "buyers" within the meaning in Cal. Civ. Code § 1791(b). Defendants are "manufacturers," "distributor," or "retail sellers" within the meaning in Cal. Civ. Code § 1791(e), (j), (l).

114.   As described herein, Defendants knowingly and willfully breached its express warranties in violation of the California Song-Beverly Consumer Warranty Act.

115.   Defendants' actions have deprived Plaintiff and Class Members of the benefit of their bargains and have caused their Roku Products to be worth less than what they paid for them.

116. As a direct and proximate cause of Defendants' breaches, Plaintiff and Class Members bought Roku Products they otherwise would not have purchased, overpaid for their TVs, did not receive the benefit of their bargain, and their Roku Products suffered diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs for repair and replacement of defective TVs.

117. Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Products, replacement of the Products, the overpayment or diminution in value of their Products, and/or the cost to make the goods conform. They are also entitled to all incidental and consequential damages resulting from Defendants' conduct, as well as reasonable attorneys' fees and costs.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT

*(By Plaintiff, Individually and on behalf of the California Class)*

118. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

119. The Roku Products are "consumer goods" within the meaning in Cal. Civ. Code § 1791(a). Plaintiff and Class Members are "buyers" within the meaning in Cal. Civ. Code § 1791(b). Defendants are "manufacturers," "distributors," or "retail sellers" within the meaning in Cal. Civ. Code § 1791(e), (j), (l).

120. As described herein, Defendants' knowingly and impliedly warranted to Plaintiff and Class members that the Roku Products were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Roku Products do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

121. Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description;
(2) Are fit for the ordinary purposes for which such goods are used;
(3) Are adequately contained, packaged, and labeled; and
(4) Conform to the promises or affirmations of fact made on the container or label.

122. The Roku Products fail to perform as warranted and would not pass without objection in the trade, as they do not provide reliable—or even feasible—functionality for core content streaming, including video streaming, system operation, and software stability. These failures undermine the central purpose for which the TVs were marketed and purchased.

123. Similarly, the televisions inability to maintain operability following Roku's own software updates renders them unfit for the ordinary purposes for which such goods are used—namely, consistent video and audio streaming of content, application access and dependable software update integration.

124. The Roku Products were not adequately labeled or packaged in a manner that disclosed the risk of screens blacking out or boot failure upon installation of Roku-issued software updates. To the contrary, the labeling and marketing explicitly represent that the smart TVs are reliable, update-compatible, and engineered for long-term performance, which they are not. For these reasons, the Roku Products do not conform to the promises or affirmations of fact made on their website, advertisements, or marketing materials.

125. Defendants breached the implied warranty of merchantability by selling Roku Products that failed after being subjected to core manufacturer-released updates. The TVs were not of merchantable quality and were not fit for the ordinary purposes for which smart televisions are used.

/ / /

/ / /

CLASS ACTION COMPLAINT

31

126. Notice of breach is not required under California law where, as here, Plaintiff and other Class Members did not purchase their Roku Products directly from Roku, but through authorized retailers or carriers.

127. As a direct and proximate cause of TCL's and Roku's breaches of the implied warranty of merchantability, Plaintiff and Class Members did not receive the benefit of their bargain and instead received smart TVs with a latent defect that substantially impaired their value. Plaintiff and Class Members were harmed by the product's malfunctioning, loss of use, and the expense of repair or replacement.

128. Pursuant to California Civil Code §§ 1791.1(d) and 1794, Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Roku Products or the diminished value of the Products due to the defect.

129. Pursuant to California Civil Code § 1794, Plaintiff and Class Members are also entitled to recover attorneys' fees, costs, and expenses.

## COUNT V – VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code 17200, *et seq.*

*(By Plaintiff, Individually and on behalf of the California Class)*

130. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

131. Defendants' conduct described herein violates each of the three prongs of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq., in that Defendants engaged in unlawful, unfair, and fraudulent business acts and practices.

132. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice" and is intended to protect consumers and competitors by promoting fair competition in commercial markets. The statute is written broadly to proscribe a wide range of deceptive and unfair conduct.

/ / /

CLASS ACTION COMPLAINT

32

133.   By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as independently actionable unfair competition and sweeps within its scope acts and practices not specifically proscribed by any other law.

134.   **Unlawful Practices**. Defendants' conduct constitutes unlawful business acts and practices under the UCL because it violates other statutes, including but not limited to the Consumers Legal Remedies Act, Civil Code § 1750 et seq., and California warranty law, as alleged herein.

135.   **Unfair Practices**. Defendants' conduct constitutes unfair business acts and practices under the UCL because Defendants sold Roku-powered smart televisions that suffer from a latent defect causing black or blank screens, flashing displays, loss of video output, boot loops, and system failure during ordinary use and following official software updates. The resulting harm to consumers substantially outweighs any countervailing benefits and offends established public policy favoring truthful marketing and consumer protection.

136.   **Fraudulent Practices**. Defendants' conduct also constitutes fraudulent business acts and practices under the UCL because Defendants marketed Roku Products as reliable, durable, smart televisions, capable of long-term use and continued performance through official Roku operating system updates, while failing to disclose material facts concerning the televisions' susceptibility to software-related failures that disable core functionality. Defendants knew or should have known of these issues and that consumers would not reasonably discover them prior to purchase.

137.   Defendants' omissions and misrepresentations were material and likely to deceive reasonable consumers, including Plaintiff and Class Members, who relied on Defendants' representations and omissions when purchasing Roku Products.

/ / /

138. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiff and Class Members suffered injury in fact and lost money or property. Plaintiff and Class Members would not have purchased Roku Products, or would have paid less for them, had they known of the Defect. The Roku Products purchased by Plaintiff and the Class are worth less than as represented and have required out-of-pocket expenditures for diagnosis, repair, replacement, or premature replacement.

139. Pursuant to Business and Professions Code § 17204, Plaintiff has standing to bring this claim and seeks restitution and disgorgement of all monies Defendants obtained through their unfair competition.

140. Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek injunctive relief enjoining Defendants from continuing their unlawful, unfair, and fraudulent practices, including requiring Defendants to disclose the Defect, correct it, and cease misleading marketing practices.

141. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered damages in an amount to be determined at trial and are entitled to declaratory and injunctive relief, restitution, and disgorgement of Defendants' ill-gotten gains.

142. Defendants have been unjustly enriched as a result of their unlawful conduct and should be required to disgorge such profits and make restitution to Plaintiff and Class Members pursuant to Business and Professions Code §§ 17203 and 17204.

143. Plaintiff further seeks an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and all other relief the Court deems just and proper.

/ / /

/ / /

/ / /

## COUNT VI – VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.*

*(By Plaintiff, Individually and on behalf of the California Subclass)*

144. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

145. Defendants' Roku and TCL are each a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and have provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

146. Plaintiff and Class Members are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

147. TCL's and Roku's acts and practices, which were intended to result, and which did result, in the sale of Roku Products with the Defect, violated and continues to violate the Consumer Legal Remedies Act ("CLRA") for at least the following reasons:

    a. Defendants represent that its Roku Products had characteristics, values, or benefits which they do not have including reliability, durability, and compatibility with official software updates, in violation of § 1770(a)(5);

    b. Defendants advertise its goods with intent not to sell them as advertised, in violation of § 1770(a)(9);

    c. Defendants represent that their Roku Products are of a particular standard, quality, or grade when they are not, § 1770(a)(7); and,

    d. TCL and Roku represent that their goods have been supplied in accordance with a previous representation when they have not.

148. As described herein, Defendants sold Products to Plaintiff and Class Members even though the Roku Products are defective, and Defendants failed to disclose its knowledge of its Defect and further failed to disclose the attendant risks

associated with that Defect at the point of sale or otherwise. Defendants intended that Plaintiff and Class Members would rely on this omission in deciding to purchase their Roku Products. Plaintiff and Class Members did in fact rely on said omissions.

149. Defendants knew, should have known, or were reckless in not knowing that Roku Products did not possess the qualities, characteristics, and functionality that Defendants represented and warranted, including the ability to function reliably during ordinary use and following official Roku OS software updates.

150. Defendants owed a duty to disclose the Software Defects to Plaintiff and members of the Class because Defendants possessed superior and exclusive knowledge regarding the defect.

151. As a direct and proximate result of Defendants' unlawful acts and practices, Plaintiff and Class Members suffered actual damages, including overpayment, loss of use, diminished value, and the deprivation of the benefit of the bargain, because Roku Products do not function as represented and are worth less than the price paid.

152. Pursuant to California Civil Code § 1782(a), Plaintiff provided Defendants with written notice of the specific CLRA violations alleged herein and demanded that Defendants correct, repair, replace, or otherwise rectify the unlawful conduct. Defendants failed to do so within the statutory period.

153. Defendants' conduct violated, among other provisions, Civil Code §§ 1770(a)(5), (a)(7), and (a)(9).

154. Pursuant to California Civil Code § 1780, Plaintiff and the Class seek appropriate equitable relief, including an order enjoining Defendants from engaging in the unlawful acts and practices described herein, restitution, actual damages, punitive damages, where permitted by law, and an award of attorneys' fees and costs.

///

155. Plaintiff and any Class Members who are senior citizens or disabled persons, as defined by California Civil Code §§ 1780(b), 1781(f), and 1781(g), further seek all additional remedies available under the CLRA, including statutory enhancements.

## COUNT VII – FRAUD BY OMISSION AND/OR FRAUDULENT CONCEALMENT

156. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

157. At all relevant times, Defendants had a duty to disclose material facts concerning the reliability, functionality, and software-update risks of Roku Products.

158. Defendants owed a duty to disclose these facts because they possessed superior and exclusive knowledge of a latent defect that causes Roku Products to suffer black or blank screens, loss of video output, flashing displays, boot loops, and system failure—often following automatic, official Roku OS software updates—facts not known or reasonably discoverable by consumers prior to purchase.

159. Defendants also owed a duty to disclose because they actively marketed Roku Products as reliable, durable smart televisions designed for long-term use and continued performance through official software updates. Having chosen to speak about quality, reliability, and update compatibility, Defendants were required to disclose material facts necessary to make those representations not misleading.

160. Defendant Roku, independently owes a duty to disclose because it exercises exclusive control over the Roku TV OS and the design, testing, approval, and deployment of software updates to all Roku-powered televisions, including TCL Roku TVs. Roku-controlled updates govern core television functionality, including video output and system stability. Despite this exclusive post-sale control

and knowledge of update-related failures that disable Roku Products, Roku failed to disclose the material risks associated with its software updates while continuing to promote Roku Products as improving over time through updates.

161. Rather than disclose the Defect, Defendants knowingly and intentionally concealed and omitted material facts regarding Roku Products' standard, quality, and reliability, including the risk that official software updates could disable core functionality and render the televisions partially or completely inoperable.

162. Defendants' concealment was material and intended to induce consumers to purchase Roku Products at prices exceeding their true value and to avoid the costs of repair, replacement, extended warranty coverage, or corrective disclosures. Defendants knew that disclosure of the Software Defects would have negatively affected sales and warranty-related costs.

163. Plaintiff and Class Members were unaware of the Software Defects because Defendants did not disclose them in marketing materials, product descriptions, packaging, warranty disclosures, or point-of-sale representations, and failed to issue timely warnings or corrective disclosures, despite mounting evidence of widespread post-update failures. Barring Class Members pro-actively searching on Roku or TCL community support chat rooms, they would have no knowledge of the Software Defects before purchase.

164. Had Defendants disclosed the existence of the Software Defects and the risk that official software updates could disable Roku Products, Plaintiff and Class Members would not have purchased the televisions or would have paid substantially less.

165. Defendants' conduct constitutes actual fraud under California Civil Code § 1572 and deceit under California Civil Code § 1710, including by knowingly suppressing material facts they were obligated to disclose and inducing reliance through partial representations regarding reliability and software support.

166. Plaintiff and Class Members reasonably relied on Defendants' omissions and representations in purchasing Roku Products.

167. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff and Class Members suffered damages, including overpayment, loss of use, diminished value, and out-of-pocket costs for repair or premature replacement.

168. Defendants acted with malice, oppression, and fraud, entitling Plaintiff and Class Members to all available legal and equitable relief, including compensatory damages, restitution, injunctive relief, and punitive damages, where permitted by law.

## COUNT VIII - UNJUST ENRICHMENT

169. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

170. As described above, Defendants sold Roku Products to Plaintiff and Class Members even though the Products were defective.

171. Defendants failed to disclose its knowledge of the Software Defects at the point of sale or otherwise.

172. Defendants unjustly charged and charges Class Members for repairs and/or replacement of the defective Products without disclosing that the Software Defects are widespread and that the repairs or suggested consumer administered factory resets to the products, do not address the root cause of the Defect.

173. As a result of its acts and omissions related to the defective TVs, Defendants obtained monies that rightfully belong to Plaintiff and Class Members. As a result of its wrongful acts, concealments, and omissions of the Software Defects in its Roku Products, as set forth above, Defendants charged a higher price for the Products than their true value. Plaintiff and Class Members paid that higher price. Roku, Inc. also reaps huge profits because Roku's revenue includes both Platform (advertising, subscriptions, etc.) and Devices (hardware including Roku-

branded TVs and licensed Roku TV OS) reporting revenue of $4.1 billion in 2024 alone.[40]

174.   Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and Class Members who, without knowledge of the Defect, paid a higher price for their TVs than they were worth. Defendants also received monies for TVs that Plaintiff and Class Members would have paid less for or would not have purchased the Roku Products at all had they been aware of the Defect.

175.   It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

176.   Defendants' retention of these wrongfully acquired profits would violate fundamental principles of justice, equity, and good conscience.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other Class Members, respectfully requests that the Court enter an Order:

A.   Declaring that this action is a proper Class Action, designating Plaintiff as Class Representative and appointing Plaintiff's attorneys as class counsel;

B.   For injunctive relief that ends the use of misrepresentations in advertising as pled forth herein;

C.   Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and Class Members, as allowable by law;

D.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts which are awarded;

E.   Ordering Defendant to pay attorneys' fees and costs of suit; and,

/ / /

---

[40] Roku Q4 & Full Year 2024 Shareholder Letter, (Feb. 13, 2025), https://image.roku.com/c3VwcG9ydC1B/4Q24-Shareholder-Letter.pdf.

F.     Ordering all additional relief as this Court deems just and proper.

Date: March 27, 2026

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: ___ */s/ Helen I. Zeldes*
Helen I. Zeldes, Esq. (SBN 220051)
*hzeldes@sshhzlaw.com*
Susan G. Taylor (SBN 190753)
*staylor@sshhzlaw.com*
Summer Wright (SBN 358428)
*swright@sshhzlaw.com*
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

*Counsel for Plaintiff.*

# JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: March 27, 2026,　　　　　　**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By:　*/s/ Helen I. Zeldes*
Helen I. Zeldes, Esq. (SBN 220051)
*hzeldes@sshhzlaw.com*
Susan G. Taylor (SBN 190753)
*staylor@sshhzlaw.com*
Summer Wright (SBN 358428)
*swright@sshhzlaw.com*
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

*Counsel for Plaintiff.*